UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

TIM LLOYD THORNTON,    )
    )
    Plaintiff,    )
    )    Civil Action No. 09-84-JMH
    )
v.    )
    )
MICHAEL J. ASTRUE, COMMISSIONER )    **MEMORANDUM OPINION AND ORDER**
OF SOCIAL SECURITY,    )
    )
    Defendant.    )
    )
    )

** ** ** ** ** ** ** ** **

This matter is before the Court on cross motions for summary judgment [Record Nos. 12 and 13][1] on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits. The Court, having reviewed the record and being otherwise sufficiently advised, will grnat the plaintiff's motion and deny the defendant's motion.

## I. BACKGROUND

On September 12, 2005, Plaintiff filed for disability insurance benefits, alleging November 29, 2004 as the date of onset of disability. Plaintiff's claim was denied initially and upon reconsideration. The Administrative Law Judge ("ALJ") held a hearing on September 26, 2008. On November 13, 2008, the ALJ

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

issued a decision denying Plaintiff's claim. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work, and that while he cannot perform his past relevant work, he could perform other work that existed in the national and regional economies.

Plaintiff appeals the ALJ's decision, arguing that the ALJ failed to afford controlling weight to the September 19, 2008, report of treating neurologist Dr. Laura Sams (the "Report"). Dr. Sams' medical records indicate that Plaintiff suffers from multifocal motor neuropathy, an autoimmune condition that causes weakness in the extremities. [TR 106] Plaintiff is treated with weekly intravenous human immunoglobulin infusions. Dr. Sams reports that the weekly intravenous drug infusions take several hours to administer, and side effects include headaches and lethargy. [TR 165] Dr. Sams states that in a 20-day calendar month, Plaintiff would miss approximately 4-10 work days due to the administration of the drug treatment and its side effects. [*Id.*]

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled or not, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.

2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.

3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.

4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled. If so, proceed to step 5.

5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience? If so, the individual is disabled. If not, the individual is not disabled.

*Heston v. Comm'r of Social Security,* 245 F.3d 528, 530 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## IV. ANALYSIS

Plaintiff's only argument on appeal is that the ALJ failed to afford controlling weight to the Report of treating neurologist Dr. Laura Sams. In the Report, Dr. Sams opines that Plaintiff would be precluded from working 4-10 days in a 20-day work month due to the administration of the drug treatment and its side effects of lethergy and severe headaches. Plaintiff emphasizes that there is no medical evidence to rebut Dr. Sams' opinion. Furthermore, Plaintiff testified that he experiences severe headaches after receiving the drug treatment, and that he takes Vicodin for the pain. [TR 177-78]

In presenting hypothetical questions to the vocational expert, the ALJ asked if there would be employment for an individual who

must miss 4-10 days of work each month due to the administration and side effects of a very necessary medical treatment. The vocational expert responded that even missing four days of work each month would preclude employment. [TR 204]. In reaching his decision that Plaintiff has the RFC to perform a reduced range of light work, the ALJ clearly did not afford controlling weight to Dr. Sams' opinion that Plaintiff would not be able to work 4-10 days of a typical work month, because as the vocational expert testified, such a limitation would preclude employment.

Defendant responds that there was sufficient evidence to support the ALJ's decision to discount or disregard Dr. Sams' opinion because it is inconsistent with the record as a whole. Specifically, Defendant relies on the fact that Dr. Sams' last treatment note is dated August 18, 2006, and there is no indication that she examined Plaintiff any time between that date and the Report. Defendant also characterizes Dr. Sams' opinion as internally inconsistent because while she opines that Plaintiff's pain does not prevent functioning in every day activities or work, she goes on to opine to Plaintiff would likely miss 4-10 days of work each month due to the drug treatment and its side effects. Upon review of Dr. Sams' Report, the Court finds that Dr. Sams' Report is not internally inconsistent. It is clear from Dr. Sams' handwritten notes on the Report that the pain she was referring to was Plaintiff's "chronic low back and neck pain and ankle pain,"

[TR 165] not necessarily the headache pain Plaintiff experiences after receiving the intravenous drug treatment.

Defendant also points to Plaintiff's medication list, which does not include Vicodin, the drug Plaintiff testified he takes for pain after receiving the intravenous drug treatment, as evidence that his complaints of pain are not entirely credible. The Court has reviewed Plaintiff's medication list [TR 91], and finds that it is not necessarily inconsistent with Plaintiff's testimony that he takes Vicodin for pain following the drug treatment. The medication list directs that "prescription medication which you are presently taking" be listed. Plaintiff testified that he only takes Vicodin when needed after a drug treatment, making it entirely possible that he was not presently taking Vicodin when he completed the form on August 1, 2008.

Defendant is correct in stating that "[a] treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings and is consistent with the other evidence of record. *See* 20 C.F.R. §§ 404.1527(b), (d)(2), (3)-(4); 42 U.S.C. § 423(d)(3); *see also Crouch v. Sec'y of Health and Human Servs.*, 909 F.2d 852, 856 (6th Cir. 1990). However, the general rule is that an ALJ must give a treating source opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial

6

evidence in [the] case record." *Blakely v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). In the event, as in the instant case, the ALJ discounts the treating physician's opinion, the ALJ must provide good reasons for so doing. *Id.* Here, the ALJ clearly discounted the opinion of treating neurologist, Dr. Sams. While the ALJ stated that Dr. Sams' opinion was "inconsistent with the record overall," [TR 21], the record is devoid of any evidence, much less substantial evidence, which suggests that Plaintiff does not suffer from debilitating headaches and fatigue for 1-2 days after receiving the intravenous drug treatment.

## V.  CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1)  That the defendant's motion for summary judgment [Record No. 13] be, and the same hereby is, **DENIED;** and

(2)  That the plaintiff's motion for summary judgment [Record No. 12] be, and the same hereby is, **GRANTED;** and

(3)  That this matter shall be, and the same hereby is, **REMANDED** for additional findings on the side effects of the intravenous drug treatment and any limitations caused by same.

This the 21st day of May, 2010.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge